## UNITED STATES v. FRANCIS.

### No. 9698.

United States Court of Appeals Seventh Circuit.

Feb. 1, 1949.

Rehearing Denied March 11, 1949.

Paul A. Pfister and C. Titus Everett, both of Indianapolis, Ind., for appellant.

B. Howard Caughran, U. S. Atty., and Elba L. Branigin, Jr., and Maurice W. Graston, Asst. U. S. Attys., all of Indianapolis, Ind., for appellee.

Before MAJOR, Chief Judge, and BRIGGLE and DUFFY, District Judges.

BRIGGLE, District Judge.

Defendant (appellant) was convicted in the District Court by a jury on an indictment in six counts charging that defendant devised a scheme and artifice to defraud chiropractors, naturopaths and other members of the non-medical healing fraternity and to obtain money by means of certain false and fraudulent pretenses, representations and promises, well knowing at the time that the pretenses, representations and promises would be false when made. The indictment charged as a part of said fraudulent scheme that defendant represented that two funds had been set up to provide for expenses and work incurred with regard to efforts to secure passage of bill No. 1909, introduced in the California General Assembly on January 27, 1945, providing for the licensing of those desiring to engage in the practice of naturopathy or any of its branches; that one of these funds called "The Naturopathic Trust Fund" contained contributions of $100, and that contributions to this fund would be held in trust (checks uncashed) and would be returned to the donors in the event bill 1909 did not pass. The other fund was to be made up of $50 contributions payable to the American Physio-Therapy Institute and was to be used for expenses in promoting the California legislation and was not to be returned to the donors. Each count contains allegations of the mailing of separate letters, checks and money orders in furtherance of such alleged fraudulent scheme.

Defendant complains of the District Court's action in overruling his motion for a directed verdict at the close of Government's case and again at the close of all of the evidence. He alleges other errors but they all relate to the sufficiency of the evidence to support the verdict. It

will thus be seen that our duty is limited to a determination of whether there is any substantial evidence to sustain the jury's verdict.

■ Defendant appears to have been engaged in the operation of a so-called "American Physio-Therapy Institute" or school at Indianapolis, Indiana. His alleged fraudulent scheme stems from an undated circular letter [1] sent to a number of individuals variously engaged as naturopaths, chiropractors and physiotherapists, soliciting contributions of $100 to the so-called trust fund and $50 to the expense fund, all apparently in the interest of furthering the California legislation heretofore referred to. It is made clear to the prospective contributor that the $50 is for expenses and not to be returned but it is made equally clear that the $100 contribution is to be kept intact and returned to the contributor unless the bill in question becomes a law. It is not clear what is to eventually become of the $100 contribution if the bill passes, but it is sufficient to note that the bill referred to in the circular failed of passage in June, 1945. A similar bill was later introduced at a special session but was not within the call of the Governor of California and was not printed.

Three alleged victims of the scheme were called as witnesses by the Government. Hubert Harisin of Burbank, California, testified that he received a copy of the circular letter and in response sent two cashier's checks to defendant—one for $50 and one for $100 drawn on the First National Bank of San Jacinto, California, and dated May 25, 1945. These checks were payable as directed in the circular and were each endorsed by defendant and deposited in one of his several accounts at the Union State Bank, Westfield, Indiana.

When defendant acknowledged receipt of the Harisin checks on May 28, 1945, he said: "This will acknowledge receipt of your letter received this morning enclosing check for $100 payable to the Naturopathic Trust Fund, which check will be held and not cashed until after the bill becomes a law in California. If for any reason it does not become a law, the check will be returned to you as originally given * * *." In spite of this assertion the checks were promptly deposited and duly cleared through regular banking

---

[1] Under date of January 27, 1945, there was introduced in the California General Assembly. Bill No. 1909, which provides for the recognition and licensing of all who desire to engage in the practice of Naturopathy—or any of its branches in that state, regardless of the present place of residence. This Bill will be passed upon in June of this year.

"This, of course, is big and important news to you personally as a member of the non-medical healing profession. As you can easily understand, there are naturally expenses and work incurred in an undertaking of this nature, and for that reason, it is necessary that funds be secured for the operation of this very important work. These funds must be met fairly and equitably by the reputable and qualified members of the non-medical profession, who will derive the benefit from the passage of such a bill.

"There have been two funds set up for this work. One fund contains the contributions of $100 each from individuals, and is placed in our safekeeping. This $100 should be in check form, made payable to the Naturopathic Trust Fund and will not be used unless the Bill is passed and licenses are issued. When you send in your check, it is put in a safety deposit box, to be used to defray expenses, only if the Bill passes. This check is not cashed before the bill is passed and in the event that the Bill does not pass, your original check will be returned to you.

"The other fund is for present operation cost. To this fund, we ask each qualified member of the non-medical profession to send in $50. This $50 will be used and will not be returned * * *.

"This $50 check is to be made payable to the American Physio-Therapy Institute and is to be used for the purposes as hereinafter set forth. * * * In closing, let us repeat exactly your part. Make your check of $100 payable to The Naturopathic Trust Fund. If the Bill does not pass, your original check will be returned to you uncashed. Make your other check of $50 payable to the American Physio-Therapy Institute. This money will be used as stated above and will not be returned. Mail both checks to: American Physio-Therapy Institute, 2210 North Meridian Street, Indianapolis 8, Indiana. The time is short. This Bill is up for passage in June. Don't delay! Send your checks in today!"

channels early in June, 1945. No part of Harisin's money was ever returned.

We pause here to note that it appears from the undisputed evidence that defendant had four separate accounts at the Westfield Bank as follows: Harry Francis, Harry Francis Trustee, National Business Service and American Congress of Physical Education, and had given specific instructions to the bank that any checks drawn by him on either of the accounts were to be paid by the bank from any one of said accounts that held a sufficient balance to meet the check. It would thus appear that there was a complete intermingling of the accounts and while some of the $100 contributions found their way into the trust account, they were subject to withdrawal for any purpose that defendant might choose.

Another alleged victim, Adolph F. Lonk of Palatine, Illinois, a chiropractor, testified that he received the circular letter hereinbefore referred to (as well as other circulars) about June, 1945 and in response sent defendant $150—$50 for expense fund and $100 for the trust fund. After the failure of the bill in the California legislature this witness made repeated demands for the return of his money without response from defendant until November 18, 1947. On this date defendant sent witness a letter [2] undertaking to explain his failure to return the $100, and also containing some veiled insinuations that witness might himself be involved in some law violation if he pressed the matter. This witness failed to have his $100 contribution returned as promised by defendant.

John G. Popik of New York testified that he knew defendant, having attended his school in Indianapolis in 1945. He received a letter [3] from defendant under date of

---

[2] "*   *   * In this California deal I only acted as go-between you fellows who were desirous of securing legislation and a license in California. All moneys that were sent to me were turned over to the California group in accordance with a definite understanding that the $50 was a contribution for expenses and the $100 was to be returned in case they did not secure legislation. *   *   *.

"Now as far as reporting me to the postal authorities, etc., I do not believe—on second thot—that you would want to do that either. While I only acted as go-between the facts that you, I and the California group were all engaged in an illegal act and has so been decided by the Supreme Court of Michigan. I am sure you will find there were men convicted up there for making legislative contributions as well as those for receiving them and the legislators too. You should also know what happened in Tennessee too. *   *   *."

[3] Dr. John G. Popik
25 Sturdevant Street
Johnson City, New York
My dear Dr. Popik:
Your letter of January 19th received today, and I am of the opinion that you did make an error in not registering for the California deal. It is not too late yet, as things are just beginning to get wound up in good shape out there.

As previously explained to you, if you want in on the deal, send one check for $50.00 made payable to the American Physio-Therapy Institute, which is to be used for expenses. And then send one check for $100.00 payable to the Naturopathic Trust Fund, which is not to be used until the bill becomes a law. When it becomes a law, then your check will be cashed and you will be protected in the securing of a license. However, if anything should happen that it does not become a law, then your check for $100.-00 as originally given will be returned to you.

If you are interested and want to come in on the deal, well then get your checks to me just as soon as possible.

I received a letter today from your friend, Irving I. Conover of Binghamton, New York, in which he is interested in taking a course to prepare him to be licensed in California. I would suggest that you get in touch with him at once and tell him that if he wants to get in on this deal to get his checks in for $50.00 and $100.00, the same as I have told you and then also enroll in the College so as to get his degrees at the earliest possible moment.

I am glad to know that everything is going well with you and that you are now getting started in Binghamton.

Everything is going along fine here at the school and we have a class of seventeen students this month.

With very best wishes, and awaiting to hear from you immediately, I am
Very truly yours,
Harry Francis
Dr. Harry Francis,
Secretary"

January 23, 1946 in response to which he contributed $150 to defendant and failed to receive any portion of it back. It will be noted that this communication went forward from defendant long after Bill No. 1909 (the bill referred to in the original circular) had been killed. True, it was about the time that another bill was attempted to be introduced at the special session but failed because not within the Governor's call.

Defendant undertook to meet these challenging circumstances by asserting that the money collected by him had to a great extent been sent to a group in California and that due to some misunderstandings he had been unable to return the trust funds to the three witnesses referred to. He claimed that refunds had been made to all other contributors. If it be true, as he claimed, that he had sent the money to others in California still this would be no excuse for his breach of trust as proclaimed in his various communications to Harisin, Lonk and Popik. The evidence rather clearly indicates that he did not at any time undertake to keep the $100 contributions intact as he had promised in his letters but used them as he saw fit. A jury could reasonably conclude from all the circumstances that he did not from the inception of the program of solicitations intend to preserve the integrity of the $100 contributions for return to their owners on failure of the legislation, but that the whole affair was a scheme of the defendant for his own personal enrichment. Defendant's explanation of why he, a citizen of Indiana, should become so profoundly interested in proposed legislation in California was feeble and unconvincing. That there were those in California who at the time were sponsoring the legislation in question, is conceded, but the jury could have concluded from all the circumstances that this was merely seized upon by defendant for the dishonest purposes charged in the indictment.

A careful study of the record leads to the conclusion that there was sufficient evidence, together with all the reasonable inferences arising therefrom to warrant the trial court in submitting the matter to a jury. A jury that saw and heard all the witnesses, including the defendant has found the defendant guilty and the District Court has approved such finding. We would not be warranted on the record before us in disturbing their findings. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; United States v. Monarch Distributing Co., 7 Cir., 116 F.2d 11, certiorari denied 312 U.S. 695, 61 S.Ct. 732, 85 L.Ed. 1130; Morley v. United States, 7 Cir., 99 F.2d 683, certiorari denied 306 U.S. 631, 59 S.Ct. 463, 83 L.Ed. 1033. The judgment is affirmed.